## WILCOX *vs.* WOOD.

*It seems* that a *lease* of premises *from the first day of May* in one year *to the first day of May* in the succeeding year, excludes the *first day.*

Proof of a *local custom,* that a lease in those terms expires at *noon of the last day* is admissible ; and the court suggest that such custom would be highly convenient.

Where an action of *trespass quare domum fregit* was brought by an out going tenant for the tearing down a partition wall in the house on the first day of May, before noon and before he had removed from the premises, and the defendant, pleaded *liberum tenementum* but did not prove his plea, and the plaintiff was *nonsuited,* the nonsuit was set aside and a new trial ordered.

Where a plaintiff declares in the common pleas, in an action of trespass originally commenced before a justice whose jurisdiction is taken away by a plea of title, the defendaet *may file a suggestion,* stating the manner in which the cause was brought into the common pleas ; *it seems,* however, that a suggestion *in the plea* would be more correct.

ERROR from the Albany common pleas.  Wilcox sued Wood in an action of *trespass quare domum fregit.*   The defendant pleaded *liberum tenementum,* on which issue was taken.  The premises are a dwelling house in the city of Albany, the first floor of which, with the exception of an entry or hall leading

to a stair case communicating with the upper floors, is occupied as a store. The house, with the exception of the store, had been let by the landlord to a Mrs. Mahan, and he had agreed to continue the lease to the *first day of May*, 1829. In November, 1828, the landlord accepted the plaintiff as his tenant in the stead of Mrs. Mahan, for the residue of the term. On the *first day of May*, 1829, previous to 8 o'clock A. M. the defendant, who occupied the store, knocked down the partition separating the store and the entry leading to the upper part of the house, threw the rubbish into the entry, which not only raised a great dust, but impeded the plaintiff in the removal of his goods. The plaintiff offered to prove that by a *general, known and established custom in the city of Albany*, a lease like that proved in this case expires at *twelve o'clock at noon* of the first day of May, and that the custom had existed as long as the memory of the oldest inhabitants of the city could recollect any event. This evidence was objected to and overruled. It is stated in the bill of exceptions that the defendant gave in evidence a lease ; but from whom, for what term, when commencing and when ending, is not stated. Upon this evidence, the court ordered a *nonsuit* to be entered. The plaintiff tendered a bill of exceptions and sued out a writ of error.

Upon the record brought up, after the entry of the nonsuit there is a *suggestion* by the defendant that the plaintiff originally commenced his suit in a justice's court, that a plea of title was there interposed, and that the plaintiff declared in the common pleas for the same cause of action for which his suit was instituted in the justice's court. To this suggestion a formal general demurrer was put in by the plaintiff, the defendant joined in demurrer, and the court gave judgment that the defendant was not entitled to make the suggestion upon the record.

*M. T. Reynolds*, for plaintiff in error.

*B. F. Butler*, for defendant in error.

*By the Court,* SAVAGE, Ch. J.   The judgment in the court below is reversed, for the reason that the court nonsuited the plaintiff improperly.   The plaintiff had proved his cause of action specified in his declaration.   The defendant had not verified his plea of *liberum tenementum,* nor had he connected himself with the title in any way, or if he did, the bill of exceptions does not shew it; but if he had, it was not the province of the court, but of the jury, to determine that matter of fact.   The court should have submitted the case to the jury. The defendant produced a lease, but from whom does not appear.   Supposing it to have been from the landlord Denniston, and supposing it to have been for a year from the first of May, 1829, then a question will arise upon the construction of the lease, whether it includes the first day of May, and then the question of custom may be agitated.

In England the courts have for centuries been vascillating between two opposite constructions, where a deed is to commence *from the date* or *from the day of the date*—sometimes holding that the day of the date is inclusive, and sometimes exclusive.   Lord Mansfield's doctrine was, that there is no difference between these two forms of expression, and whether the day of the date is included or excluded depends on the subject matter of the instrument and the intention of the parties, *Cowp.* 714.   In this state, in questions of the computation of time arising under our own rules, our statutes, and upon promissory notes, we hold that the day of the date is excluded, upon the same principle, if the lease is, to hold from and after the first day of May, it would seem to follow that the first day is excluded.   If it is from the first day of May or from the day of the date, and the lease is dated the first day of May, then, according to the rule in England, as at present understood, the first day is included.   I know of no decision in this state settling that precise point.   If the good people of Albany have settled it by a custom which is of sufficient age to give it the sanction of authority, they have done more than the courts have been able to do ; and if they have settled the point that such a lease commences and terminates at twelve at noon on the first of May, in my opinion they have settled it

as it should be. That a custom relating to leases and when the lessee is entitled to possession is valid, seems to be admitted in England. So it is said in *Doe* v. *Snowden*, 2 *Black*. 1225, that if there is a taking from old lady-day, (5th April,) the custom of most countries would entitle the lessee to enter upon the arable at candlemas (2d February) to prepare for the lent corn, without any special words for that purpose, and the meadows not till the first of May. From the report of *Mary Lace's case*, 4 *City Hall Recorder*, 158, 9, it would seem from the charge of the mayor (Colden) that such a custom exists in New-York, as was offered to be proved in this case in the court below. Custom is a law established by long usage. A universal custom becomes common law. If the usage be confined to a particular place, it is a custom. Customs are sometimes allowed to prevail contrary to the rules of common law, but in such cases are construed strictly. We are not now called upon to decide what constitutes a good custom. It is enough to say that we have authority in *Dow* v. *Snowden* to sustain us in the position that there may be a good custom to authorize taking possession under certain leases not according to the strict letter of the instrument. That was not precisely the question before the court in that case, but when *notice to quit* should be given where the lease commenced and expired on the days above mentioned; and the court held it to be a lease commencing and ending on lady-day, because under such a lease the lessee would be entitled to possession of the different sorts of land at those different days. I do not mean to be understood that, in general, customs can be valid which give a construction to written instruments; that is the business of the courts; but if under leases in the usual form, from the first of May to the first of May, it has been the immemorial usage to interchange possession at twelve o'clock at noon, it seems to me unobjectionable—not as a construction of the instrument, but as a practical exercise of rights under it. The time in the lease either includes or excludes the first of May; but as the courts would not settle the point, the people have taken the medium and that which is the most convenient, and therefore that which was no doubt the true intention of

the parties. A strict compliance with the letter of the lease, whether it includes or excludes the day, would compel those who change tenements to move in the night, or remain one night in the street. Such an absurdity was never intended. I am of opinion that the proof of custom offered should have been received.

The common pleas also erred in giving judgment for the plaintiff below, upon the demurrer to the suggestion that the suit was originally commenced in a justice's court. By demurring, the plaintiff admitted the truth of the suggestion, and the sole question was whether the defendant had the right to make it. That he had such right is unquestionable. A defendant who has interposed a plea of title in a justice's court, and who is subsequently proceeded against in the common pleas, has certain rights secured to him by statute, and if the original commencement of the suit is not stated in the declaration, the defendant has the right to insist that such fact should appear on the record. The proper course would be to make the suggestion in the plea. Here, instead of doing so, the defendant filed a suggestion and probably served a copy. The plaintiff demurred to it, but, instead of specially objecting to the *manner* of the proceeding or the form of the suggestion, he put in a general demurrer, which left open only the question whether the defendant had the right to insist that the fact should appear upon the record ; and that question was erroneously decided.