Nov. Term,
1853.

Cox
v.
O'Riley.

## Cox and Others *v.* O'Riley and Another.

Wharfingers are not, like common carriers, answerable for all goods that may be intrusted to them, not lost by the act of God or the public enemy; but are only responsible for losses happening through failure to exercise reasonable and ordinary care and diligence; and they are, in this particular, in the same category with warehousemen.

In a suit against a wharfinger for the value of goods received by him as such and not delivered to the consignee, he must first prove that he has not the possession of the goods, to allow evidence that he exercised reasonable and ordinary diligence in preserving them.

It is the duty of the wharfinger to give direct and reasonably prompt notice to the consignee of the arrival of the goods, and he will not be excused from the consequences of a neglect to give the notice by the simple proof of his having notified a person in the employ of the consignee of the arrival, or by the consignee's having heard a rumor that the goods were in the wharfinger's possession.

A usage of trade may be proved to aid, in a case of doubt, in construing

a contract or determining upon the manner of discharging some duty or performing some act; but to give it any controlling effect it must be a long-continued, uniform, and generally known usage; and it must relate to matters of fact and not to a common belief as to what is the law.

A usage repugnant to well-established rules of law is not, in any case, admissible in evidence.

Nov. Term,<br>1853.<br><br>Cox<br>v.<br>O'Riley.

ERROR to the *Vanderburgh* Circuit Court.

Wednesday,<br>November 30.

Perkins, J.—Assumpsit by the plaintiffs against the defendants for the purpose of recovering from the latter the value of a box of goods which it is alleged they received as wharfingers, and negligently lost. Plea, non assumpsit. Trial by the Court without a jury, and judgment for the defendants. A motion for a new trial was overruled.

The evidence is upon the record; and from it, it appears that in *March*, 1851, the plaintiffs, *Cox, Robb, & Co.*, purchased of a mercantile house in *Cincinnati, Ohio*, a bill of goods exceeding 800 dollars in amount, which goods were to be forwarded to the store of said *Cox, Robb, & Co.*, at *Paris*, in *Posey* county, *Indiana*.

The goods were packed in four boxes and shipped on the 3d day of *April*, 1851, upon the steamboat *Bay State*, and consigned to *Cox, Robb & Co., Paris*, care of *Morgan* and *Keen, Evansville, Indiana*. *Paris* is situated some twenty-five miles from *Evansville*, in a north-westerly direction, and back from the river.

*Morgan* and *Keen* were wholesale merchants in *Evansville*, and the plaintiffs, *Cox, Robb, & Co.*, were customers of them, and, hence, took the liberty, without their consent or knowledge, of having the goods in question consigned to their care.

The defendants, *O'Riley* and *Mitchell*, were wharfingers and forwarding and commission-merchants at *Evansville*, and in the habit of receiving goods shipped to *Morgan* and *Keen*.

Three boxes of said goods arrived at *Evansville*, were discharged upon the wharf-boat of *Taylor* and *Harvey*, and received by *O'Riley* and *Mitchell*, the defendants, who, on the 21st of *April*, by their clerk, Mr. *Wheeler*,

presented the bill of lading of the four boxes named in it as having been shipped, at the store of said *Morgan* and *Keen*, and received from them the charges on said boxes for freight. *Morgan* and *Keen* did not have the goods removed from the boat, but suffered them to remain upon it till the next day, when the teams of *Cox, Robb, & Co.* arrived and received the three boxes for transportation to *Paris*, the fourth box being still missing.

Two or three days after this, the missing box was discharged upon the wharf-boat of *Taylor* and *Harvey*, being returned from *Paducah*, whither, by some agency, it had been taken. It was received by the defendants, *O'Riley* and *Mitchell*. Shortly afterwards it was missed again, and was unheard of for two weeks, at the end of which period it re-appeared at *Evansville*, from a trip upon the *Wabash*, and was placed upon the wharf-boat of the defendants. The clerk of said wharf-boat, soon after, informed "a lad" employed about the store of *Morgan* and *Keen*, but in what capacity does not appear, though it was proved that it was not his business to receive or deliver goods, that the missing box had arrived, and requested him to notify his employers of the fact; but he did not know whether the request was complied with. The box remained on the outer guard of the wharf-boat for five days. *Morgan* and *Keen*, within a day or two after its arrival, had information that the box was upon said boat, but from what source the information was derived is not shown. On one occasion, *O'Riley* directed a drayman to take said box to *Morgan* and *Keen*, and he promised to do so after he should have attended to a steamboat that was about landing at some point, not designated, in the port of *Evansville*. When he returned for the box he was unable to find it. It does not appear that he made any inquiry, but simply a search by himself for the box, which proved fruitless. The record discloses nothing further as to what became of it.

It was proved "that the practice on the wharf-boat of the defendants was, that 'town' freight was received by the defendants, but not stored on the wharf-boat unless

especially directed by the owner or consignee, in which case regular commissions at 1 dollar per ton were charged; that defendants advanced the freight on town freight, for which advances, and for the trouble of receiving the freight, defendants charged commissions, but nothing was charged for storage, the owners or consignees being advised immediately of the receipt of their freight at the wharf; and that after such notification, defendants did not consider themselves liable for the safety of freight; that frequently they notified the drayman of the owner or consignee of the arrival of the goods, and that the above mode as to town freight was the custom with the other forwarding and receiving merchants on the wharf; that in rainy weather town freight received by the defendants usually remained on the boat until the owner or consignee was informed of its arrival, but when the wharf-boat was filled with other freight, or the weather was good, town freight did not remain on the wharf-boat, but was rolled through it to the wharf, where it remained till removed by the owners; and that it was the custom of all the receiving merchants on the wharf not to send up the town freight by drays or otherwise, but to notify the owners of its arrival. That by town freight was meant such freight as was owned by or consigned to citizens of *Evansville.*"

Such is the case made by the evidence.

Wharfingers are not, like common carriers, answerable for all goods that may be intrusted to them in their line of business, except such as may be lost by the act of God or the public enemy. They are responsible for losses only which happen through a neglect to exercise reasonable and ordinary care and diligence. They are in the same category, in this particular, with warehousemen. Story on Bailm., p. 451.—*Thomas* v. *The Boston and Providence R.R. Co.*, 10 Met. 472. Were it shown, then, by the evidence, that the box of goods in question, which is traced to the possession of the defendants as wharfingers, had actually passed out of their possession—been lost, in fact, from them—we should be called upon to determine whether it

had been so lost for the want of reasonable care on their part or not.

But the evidence does not show that it has passed from the possession of the defendants. It was last seen upon their wharf-boat, and they give no further account of it. For aught that appears, it may have been taken by them to their own house, and appropriated to their own use. It devolved upon them to show the box out of their possession. They might have proved that it had been consumed by fire, crushed and destroyed by other boxes, &c., thrown upon it, knocked into the river, or taken off by the hands of some other steamboat, &c.; and when such proof had been made, it would have devolved upon the plaintiffs to establish that the loss, however it might have happened, occurred for the want of reasonable care on the part of the defendants. But they must first clear themselves of the possession of the property. A rule of law that would permit a party to receive property, refuse to account for it, and be protected in the refusal by a presumption that it was lost, would work too great and too frequent injustice to be tolerated. In the case before us, one of the defendants points out the box in controversy to a drayman. It is then on his own boat, in his own custody. At a subsequent hour the drayman calls to receive the box, but it is missing. No attempt is now made by the defendants to account for its absence. It is not shown that any other steamboat had been receiving, in the meantime, goods from the wharf-boat on which the box was seen, and, hence, might have taken it, nor that any person had been upon the wharf-boat for any purpose. The naked facts simply appear, that the box is at one hour in the possession of the defendants, at another it is called for and not found, and from that time to the present remains unaccounted for. The rule that the party must prove the property to have been lost, may sometimes operate hardly on the bailee, but not so often as would the contrary work injustice to the owner.

But it is said that usage at *Evansville* absolves wharf-

ingers from liability for goods lost after notice to the consignee or owner, and that the defendants are brought by the evidence within the usage. If there be such a usage at *Evansville*, it cannot bear upon this suit, for it is not shown that after the return of the missing box from the *Wabash*, any notice was given to the consignees. The clerk of the wharf-boat requested a lad in their employ to notify them. Without further information about this lad, we cannot say he was an agent of the consignees to whom notice, binding on them, could be given; and the clerk of the wharf-boat did not so regard him, for he did not assume to give the notice to him as agent, but requested him, rather as agent of the clerk, to give the notice to *Morgan* and *Keen*. With this request there is no evidence that he complied. True, *Morgan* and *Keen* had information, by rumor or otherwise, that the box was at the wharf-boat; but they were not bound to act upon rumor, and the defendants cannot avail themselves of any such irregular, informal notice in excuse for their own neglect to give direct and reasonably prompt notice.

But no such usage as is contended for is proved. A usage of trade may be proved to aid, in a case of doubt, in construing a contract, or determining upon the manner of discharging some duty or performing some act; but to give it controlling effect, it must be shown to be a long continued, uniform, and generally known usage. It must also be a usage relating to matters of fact, and not to modes of thinking as to the law. In this case the proof is simply that the wharfingers, &c., at *Evansville*, after notice given, &c., were accustomed to consider themselves as not responsible. This amounts to nothing. A usage in conflict with plain, well-established rules of law, is not admissible in evidence in any case, and must be disregarded. We may be permitted to add the remark that were the courts, by their decisions, to encourage the growth of these local usages, originating generally in lax business practice or mistaken ideas of law, they might become as great an evil, a source of as much want of uniformity in the law, as was the local legislation of the

Nov. Term,
1853.
_____
Doe
v.
Richards.

past—an evil supposed to be eradicated from our political system by the new constitution.

For cases illustrating the law as to proving usage and custom to aid in the construction of contracts, &c., see *Foye* v. *Leighton*, 2 Foster (N. H.) R. 71.—*Edie* v. *East India Company*, 2 Burrows 1216.—*Bowen* v. *Stoddard*, 10 Met. 375.—*Hone* v. *The Mutual Safety Insurance Company*, 1 Sandf. (N. Y.) R. 137.—*Beirne* v. *Dord*, 2 *id*. 89.—*Beals* v. *Terry*, *id*. 127.—*Suydam* v. *Clark*, *id*. 133.—*Webb* v. *National Fire Insurance Company*, *id*. 497.—*Read* v. *Gibbs*, 3 *id*. 203.—*Child* v. *Sun Mutual Insurance Company*, *id*. 26.—*Hawes* v. *Lawrence*, *id*. 193.—*The Citizens' Bank* v. *The Nantucket Steamboat Company*, 2 Story's R. 16, and cases there cited; and see 2 Greenl. Ev. p. 205.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*C. Baker*, for the plaintiffs.

*J. G. Jones* and *J. E. Blythe*, for the defendants.