HARPER *v.* POUND.

Suit upon a lease, assignment and guaranty. The lessee agreed to make certain improvements on the premises. The lessor assigned the lease or agreement to the appellee, and guarantied that the lessee would perform his part of the contract within 10 dollars' worth of work. The assignee sued the lessor.

*Held,* 1. That the lease, assignment and guaranty were a sufficient cause of action.

2. That it was not necessary that the consideration for the guaranty should be set out.

Where no objection was made to the sufficiency of a cause of action in the Court below, the objection cannot be taken in error, if there be enough to bar another action for the same cause.

Evidence going to contradict or explain the face of a written contract containing no terms of art or mystery, or ambiguity, is inadmissible.

A local usage or custom must, at least, appear to be long continued, uniform and generally known, to entitle it to consideration in explanation of a contract.

The recognition of local usages is, as a general rule, contrary to the public

policy of this state: indeed, *it seems*, that a good usage or custom in this state should, in addition to the common-law requisites, be shown to prevail throughout the state as a single locality.

*Aliter*, with commercial usages.

In the absence of words of limitation, the term *to clear*, as applied to removing timber from land, means, to remove all the timber of every size, except the stumps; and parol evidence of a local meaning of the word is inadmissible to explain a written contract.

Nov. Term, 1857.

HARPER
v.
POUND.

APPEAL from the *Vigo* Circuit Court.

STUART, J.—Suit before a justice of the peace upon a written agreement, and the assignment and guaranty indorsed thereon. Damages claimed, 100 dollars. The agreement, &c., was filed before the justice as a cause of action. It was as follows:

Saturday,
January 2,
1858.

"Article of agreement made and entered into this 27th day of *May*, 1845, between *Warren Harper* and *Jonathan Frakes*, both of the county of *Vigo*, and state of *Indiana*, as follows: The said *Harper* has rented or leased the farm where he now resides for the term of five years from the first day of *March*, 1845, for which the said *Frakes* is to clear out the field east of the house, and put the fence eight rails high, or seven and a ground chunk. He is also to have the use of the wood pasture, but not to cut any timber in it; and he is also to clear and fence nine acres and a half lying north-west from the house, and put a fence eight rails high without a ground chunk, and to have all [the timber] on the nine and one half acres, except what it takes to make and keep up the fence. The said *Frakes* is to take no timber off said land, except where he is to clear, and out of the field first mentioned, and he is to leave the place in good repair. [Signed] *Warren Harper, Jonathan Frakes.*"

This contract was assigned to *Joseph Pound*, the appellee, as follows, viz.:

"*March* 28, 1846. I assign the within to *Joseph Pound*, and go *Jonathan Frakes'* security that he will complete his contract within ten dollars' worth of work. [Signed] *Warren Harper.*"

These papers are necessary to show the point of the errors assigned.

VOL. X.—3

There was a trial and recovery before the magistrate; and, on appeal to the Circuit Court, a trial without a jury, and finding for *Pound*, the plaintiff below, for 94 dollars. Motion for a new trial overruled, and the evidence made part of the record. *Harper* appeals.

The errors assigned, as far as they conform to the statute, are—

1. That there was no sufficient cause of action to charge *Harper*.

2. There is no consideration shown for the guaranty.

3. There is no diligence shown to collect the claim from *Frakes*.

4. The rejection of evidence offered by the defendant below.

There is no error assigned in relation to the overruling the motion for a new trial; so that the sufficiency of the evidence to support the finding is tacitly admitted. Nor would the assignment of such error have availed; for the evidence was conflicting, and in such cases we never disturb the finding of the Court or the verdict of the jury on questions of fact.

1. The insufficiency of the cause of action. This Court has always given a liberal construction to pleadings before magistrates. *The State* v. *Mowbray*, 6 Blackf. 89.— *Olds* v. *The State*, *id.* 91.— *Cook* v. *Hedges*, *id.* 184. See, also, *Mullen* v. *The Board of Commissioners, &c.*, at the present term (1). We think the lease, assignment and guaranty a sufficient cause of action.

Besides, no objection was taken to the sufficiency of the cause of action, either before the magistrate or in the Circuit Court. It is too late to take the objection on error, if there be enough to bar another action for the same cause. R. S. 1843, p. 870.

2. The consideration of the assignment, &c., is not set out. It was not necessary. R. S. 1843, p. 589, § 2. *Harris* v. *Pierce*, 6 Ind. R. 162.

3. No diligence was shown to collect of *Frakes*, and no excuse for the want of it. As a question of law, this error goes to the sufficiency of the complaint before the justice,

and must fall under the same ruling as the first error. As a question of fact, it has been found in favor of the affirmative, and we have nothing to do with it.

4. The rejection of evidence offered by the defendant. This question is presented by two separate bills of exceptions. The first relates to the value of completing the work to be done by *Frakes*. It was proved to be worth one dollar and fifty cents per acre to clear the land of timber, brush and undergrowth. Defendant offered to prove, by a competent witness, that the *clearing* out of the land mentioned in the contract, was of other and distinct matters than the clearing and removing the timber, &c., and that it was not worth more than one dollar in all to clear out the matters and things intended, and agreed, and understood by the parties as to be cleared out, at the time of making the contract.

This evidence was clearly inadmissible. It was in substance a proposition to contradict the face of the contract. It does not appear that the Court were at all in doubt as to the terms and meaning of the contract on its face. Where there was no ambiguity, and no terms of art or mystery, no explanation of the contract could be admitted. The evidence was correctly excluded.

In the second bill of exceptions in relation to evidence, the defendant below offered to prove that, according to the usage of that locality, the term *to clear*, meant, and was understood by the parties to include, the clearing and removing of timber eighteen inches and under, and that such clearing was not worth as much per acre as the plaintiff had proved. This evidence, on the objection of the opposite party, was also excluded. And we think correctly. For to entitle a usage to consideration in exposition of a contract, it should appear to be long continued, uniform and generally known. To permit the temporary or indolent usages of each locality to control contracts, would be to make contracts conceived in the same language, and relating to the same subject-matter, mean one thing in one place and another in another. A contract for clearing land might thus be made to mean one thing in *Posey* county,

and quite another in *Steuben* or *Lake*. In one locality, the word *clearing* might mean to take out the stumps; in another, to clear off everything but the stumps; and in another, to clear off such timber as was eighteen inches and under. And the same contract, in precisely the same words, would mean each of these things in the respective localities. This would create a body of local laws far more intricate and embarrassing in judicial investigations than the local statutes with which the state was formerly inundated. The recognition of these local usages is, as a general rule, contrary to the public policy of this state. Our constitution and judicial decisions are hostile to local legislation and local customs. The policy of the state is to have all her localities a unit—the same law and the same rule of decision prevailing everywhere throughout the state. Perhaps it is not too much to say that a good usage or custom in this state should, in addition to the common law requisites, be shown to prevail all over the state, regarded as a single locality. See *Cox* v. *O'Riley*, 4 Ind. R. 368.

This has nothing to do with commercial usages, which are not peculiar to *Indiana* alone. These, we have recognized as binding upon contracting parties. It is presumed that the usage entered into the minds of the parties, and made a part of the contract. Ang. on Car. § 301.—*Grant* v. *The Lexington Insurance Company*, 5 Ind. R. 23.

We are well aware of the conflict of authorities on the question of usage. Even a local usage opposed to the general law is not without authority. *Snowden* v. *Warder*, 3 Rawle, 181.—*Jones* v. *Fales*, 4 Mass. R. 254.—*Wilcox* v. *Wood*, 9 Wend. 346. And counsel for *Harper* in this very case, cites authority to show that by a particular usage it takes 1,200 to make 1,000! *Smith* v. *Wilson*, 3 Barn. & Adol. 729. The case was this: The lessee of a rabbit warren agreed that he should leave 10,000 rabbits— the lessor paying £60 per thousand. In an action by the lessee against the lessor for the price of the rabbits left in the warren, it was held that parol proof was admissible to show, that, by the custom of the country where the lease

was made the word *thousand* denoted 100 dozen or 1,200 rabbits. In the argument of that case, numerous other instances are given where the word *thousand* does not, in this or that branch of business, or locality, mean *ten hundred.*

We do not, however, feel at liberty to unsettle the meaning of words by following such lights. In addition to the policy of this state, above indicated, we think the word *clearing*, as used among us, imports no ambiguity. Parties may, by contract, enlarge the word so as to expressly, or by necessary implication, include stumps and everything. Or they may, by express terms, or like implication, limit it to clearing all eighteen inches and under. But such express contracts do not establish or tend to support customs. In the absence of any words of limitation, we think clearing means, taking off all the timber of every size, but does not include taking out the stumps. This, we think, was the meaning of the word as used in the contract; and that it could not be explained, enlarged, or limited by parol evidence of a local usage to the contrary. To control the express terms of the contract, the usage must be general in this state.

We omitted to notice the case of *Clayton* v. *Greyson*, 31 Com. Law R. 343, cited by counsel for *Harper*. That case does not sustain the position assumed by *Harper*, nor impair that above indicated. The word *level*, as used in mining, has a peculiar signification among miners. To enable the Court to give proper construction to the contract, parol evidence was admitted of what miners meant by the word, viz., that among miners *level* was used with reference to a geological *stratum*, and might be a line above or below the horizontal depth of the bottom of the mine. This was a word of art applicable to mining everywhere; and hence its meaning in the minds of the parties was a part of the contract. Such parol evidence is matter of every day occurrence in the Courts. But it does not support the position for which it is cited. If, as in that case, it could be shown that the general meaning of the word *clearing* was thus and so, not in *Vigo* county alone, but

Nov. Term, 1857.

The Indian-
apolis and
Cincinnati
Railr'd Co.
v.
Townsend.

among farmers generally, then it would fall within the rule we have above indicated. *Plowing* is a word without any absolutely fixed meaning as to the depth of furrow; but the Courts could not, in exposition of a contract, admit parol evidence that plowing in *Clay* or *Vigo* county meant a furrow two inches deep. If parties would contract for such a furrow, they must so express it; otherwise, the Courts will be governed by the general usage.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*J. P. Usher*, for the appellant (2).

*C. W. Barbour* and *S. B. Gookins*, for the appellee (3).

(1) 9 Ind. R. 502.

(2) Counsel for the appellant cited the following authorities:

1. Touching the consideration for the guaranty,—*Leonard* v. *Vredenburgh*, 8 Johns. 29; *Larson* v. *Wyman*, 14 Wend. 246; *Packer* v. *Willson*, 15 *id*. 343; *Rogers* v. *Kneeland*, 13 *id*. 114; *People* v. *Shall*, 9 Cow. 778.

2. Touching the admissibility of evidence to explain the meaning of terms, *Hutchinson* v. *Bowker*, 5 Mees. & Welsby, 535; 1 Greenl. Ev. § 280, and authorities there cited, particularly *Clayton* v. *Greyson*, 5 Ad. & El. 302, 31 Eng. Com. Law R. 343; *Powell* v. *Horton*, 29 Eng. Com. Law R. 452.