### SYLVESTER S. MANGUM v. HARVEY P. FARRINGTON.

The right to distrain for wharfage was not taken away by the Act of 1846, abolishing distress for rent, nor by the act of 1860 " in relation to the rates of wharfage," &c. The reference, in the latter act, to section 207 of the Act of April 9th, 1813, is clearly a mistake, and the statute being a remedial one will be construed as a reference to section 217 of the same act.

A written contract may be interpeted by the local customs in reference to which it was made, and it is error to exclude evidence of such customs.

As between the lessor of a bulkhead and the lessor of the adjoining pier, evidence of the custom of the port is admissible to show how far wharfage is collectible for the use of bulkhead, and to what extent for the use of the pier.

The defendant in this case, being the lessee of the pier at the foot of Laight street, levied upon property in two barges for his wharfage. It appeared upon the trial that the two barges were not fastened to the pier, but lay in the slip, and that they were third or fourth from the bulkhead. The plain-

tiff, who was also lessee of the bulkhead in front of which the barges lay, brought suit to recover the articles levied upon, claiming that the remedy by distress was abolished, and also that he, as lessee of the bulkhead, was entitled to the wharf-age. The defendant offered proof of a custom, that the lessee of the bulkhead should be allowed to collect wharfage from only the boat alongside the bulkhead and the next boat beyond. This evidence was excluded and exception taken. It was admitted that the proceedings on the distress were regular, if the remedy by distress was still allowed. Judgment was given for the plaintiff, and the defendant appealed.

BRADY J.—The defendant was the lessee of the small pier at the foot of Laight street, North River, and the plaintiff was the lessee of the bulkhead between Hubert and Laight streets, North river, on each side of the small pier. The barges Huron and Raymond were in the slip, and third or fourth from the bulkhead, and " lay next to the little pier at foot of Laight street." There were at least two vessels between them and the bulkhead, and the defendant claimed to be entitled to wharfage for those barges, and to the right to distrain for it, if not paid. He did distrain, and, to recover the property which he took by distress, this action was brought. The proceedings upon the distress were admitted to be regular. The plaintiff insisted, however, that the defendant was not entitled to wharf-age, but if entitled to it could not make it by distress, that remedy having been abolished by statute. The barges named were not fastened to the defendant's pier, and his right to wharfage seems to depend upon an alleged universal custom, in this city, by which the owner or lessee of the bulkhead, is not allowed to collect wharfage for more than two vessels—that is, the vessel alongside of the bulkhead, and one outside of her. The defendant offered to prove such a custom, but an objection being made, the proof was excluded and judgment given for the plantiff. I think the proof should have been received. The bulkhead is a structure built up along the river bank, and piers extend from it at right angles toward the channel of the river. If the lessee of the bulkhead could locate his vessels in a line from the bulkhead to the end of the pier, the use of the pier could be destroyed, and if the lessee of the pier could

dispose of his vessels laterally and consecutively from the pier without restriction, the use of the bulkhead would be comparatively valueless. The lease is silent on this subject, and it would seem, under the circumstances, to be one for interpretation by a local custom. Such a custom may not only be resorted to in explanation of contracts, but the contracting parties are supposed to have made their engagements in reference to it.

Every demise between landlord and tenant in respect to matters on which the parties are silent, may be fairly open to explanation by the general usage and custom of the country or of the district where the land lies. Every person is supposed to be cognizant of the custom, and to contract with a tacit reference to it. *Vanneso* v. *Pacard*, 2 Peters U. S. R. 148; *Wigglesworth* v. *Dalleson*, Douglass, 201; *Wilcox* v. *Wood*, 9 Wend. 346.

The plaintiff in taking his lease of the bulkhead, and the defendant in taking his lease of the small pier, must be presumed to have taken it with knowledge of the custom, and are as much controlled by it, as if the effect were stated in their respective leases. If therefore the right to distrain for the wharfage claimed existed, when the right was exercised, the judgment should be reserved.

Hilton J.—By section 217 of the "act to reduce several laws relating particularly to the City of New York into one act, passed April 9th, 1813 (see 2 R. Laws, 430; *Davies' Laws*, 553), it was provided, that when any vessel has laid twenty-four hours at any wharf, and the master or owner refuses or neglects to pay the wharfage, or give security therefor, being thereunto required by the owner or wharfinger, by notice in writing left on board with the mate or one of the hands belonging to the vessel, it shall and may be lawful for the owner or wharfinger to distrain for such wharfage, on any goods or chattels found on board such vessel, and so from time to time as often as twenty-four hours' wharfage shall become due, and the goods and chattels so distrained, to sell and dispose of, in the same manner as is provided in the case of rent.

Thus where the wharfage is not paid or secured, the owner of the wharf may from time to time, and as often as twenty-

four hours' wharfage becomes due, proceed on board the vessel and take therefrom and keep sufficient goods and chattels, as a pledge and security for the payment of the wharfage so distrained for, the distress being in all cases proportioned to the amount owing. (3 Black. C. 12 ; Burrill's Law Dict'y—Distrain.)

If the wharfinger desires to sell and dispose of the goods and chattels thus acquired by distress, he is required to proceed in conformity with the statute in respect to sales of property taken upon a distress for rent; that is, give five days public notice of sale, and at the day and place appointed in the notice, sell the goods at public auction for the best price that can be obtained. Of course, after applying the proceeds to the payment of the expenses of the distress sale and the wharfage, the owner will be entitled to have any surplus returned to him. (See 2 R. S. sec. 26, 504.)

The act of 1846, p. 369, abolishing distress for rent, in no way affects the right thus given to distrain for wharfage, nor does it in terms repeal the 26th section of the R. S. to which I have referred. The language used in the act of 1846 is merely " Distress for rent is hereby abolished," thus leaving it to be inferred that the legislature did not intend by it to repeal absolutely, and for every purpose, all the provisions of the Revised Statutes then existing relating to proceedings upon a distress for rent, because those provisions were applicable in some respects to cases of distress like the one in question for non-payment of wharfage. But even if all those provisions had been expressly repealed, it would not have affected the right of the wharfinger to distrain and sell under the act of 1813, as reference might still be had to a repealed statute for the purpose of ascertaining the manner in which goods and chattels thus taken in pledge under the authority of an existing law might be disposed of.

Nor can it be said that the " Act in relation to the rates of wharfage," &c. passed April 10, 1860 (See Laws, 1860, p. 416), took away or in any manner affected or abrogated this right; but on the contrary, in my opinion the right was expressly affirmed by it. This act, after establishing a higher rate of wharfage than was theretofore allowed, declaring, however,

Mangum v. Farrington.

that it should not affect the rates chargeable by the then exist-
ing laws on lighters, canal boats, or barges (See chap. 266,
Laws 1852; Davies' Laws, p. 1089), and enacting that the
wharfage should .be a lien on the vessel, provided by sec. 7,
that the collection of the rates of wharfage thereby established.
shall be enforced in the manner prescribed in the 207th section
of the act of April 9th, 1813 (*supra*).

This reference to the 207th section is clearly a mistake of
the framers of the law, the 217th section being manifestly the
one intended. Therefore, in cases of remedial statutes like
this, when it is obvious that a special remedy was designed to
be given to a particular class of persons in certain cases, it is
the duty of courts to apply a liberal and equitable rule of con-
struction, even though the construction put upon the statute be
contrary to the letter of it. (*Dwarris on Stat.* 718.) A thing
within the letter of a statute is not within the statute, unless it
be within the intention of the makers. (*The People* v. *Utica
Ins. Co.*,15 Johns. R. 358, 379; *Jackson* v. *Collins*, 3 Cowen, 89.)

The propriety of this rule is illustrated in the present in-
stance. Section 207 thus referred to relates to cases where a
party has been fined · by a magistrate for breaking any glass
lamp, window-porch, knocker, or other fixture in the city, and
refuses payment of the fine or forfeiture imposed therefor,
and there is no sufficient distress on which the same may be
levied, he may be committed to Bridewell by the magistrate,
there to remain without bail or mainprize for the space of two
months, or until such forfeiture and costs are paid : and when
the offence is committed by. any slave, apprentice, or ser-
vant, the forfeiture shall be paid by the master, or in default
thereof, the servant may be so committed. It will not for a
moment be supposed that the legislature designed to incorpo-
rate in the act of 1860, as a means for collecting the rates of
wharfage therein allowed to wharfowners, provisions like these,
so clearly inapplicable to the collection of wharfage, and espe-
cially when the forfeiture thus imposed goes toward supplying
new lamps and for the support of the poor (see section 206).

We should therefore hold that section 217 of the act of 1813
was the one intended to be referred to, and that under its pro-
visions the defendant was authorized to proceed by distress
for the wharfage due him in the manner admitted at the trial.

Its non-payment gave him the right to proceed on board the vessels and distrain upon the property in question, and the plaintiff was not entitled to its return without a payment or tender of the amount arising for wharfage, and the expenses necessarily incurred in making the distress. This not having been done, he has no cause of action, and the judgment of the Justice to the contrary should be reversed.

In conclusion, I will add that I fully concur in the views of Judge Brady respecting the admissibility of the evidence offered by the defendant at the trial, upon the question of usage, and as to the effect of that evidence if it had been admitted.

Judge DALY concurred.