Williams *v.* Summers *et al.*

———————⬧———————

WILLIAMS *v.* SUMMERS ET AL.

LEASE.—*Mining Lease.—Screened Coal.*—Where a mining lease provided that the lessees should pay a certain sum per bushel " for all screened coal" that the lessees should remove from the demised premises, and at the time of the lease there was but one screen in use at the mine leased, and but one screen in common use in other mines in the same locality, and afterward the lessees placed over the screen then in use in said mine another or second screen, with larger meshes or spaces between the bars;

*Held,* that the parties must be held to have contracted with reference to the state of things existing at the time the lease was made; that the words " screened coal" meant such coal as passed over the single screen then in use ; and that the lessees must pay the price stipulated for all coal that passed over the lower as well as the upper screen.

From the Owen Common Pleas.

*G. A. Knight,* for appellant.

*W. W. Carter, S. D. Coffee, D. E. Williamson,* and *A. Daggy,* for appellees.

DOWNEY, C. J.—The action in this case was brought by the appellant against the appellees, and there was judgment for the defendants. The main question in the case is the proper construction of a mining lease, dated February 13th, 1869, held by the defendants from the plaintiff, who was the owner of the land. There is nothing peculiar in the lease. The clause in question is this : " And said grantees agree, in consideration of the above and foregoing covenants, to pay to the said Nathan Williams three-fourths of one cent per bushel for all screened coal that said grantees may remove from said land."

It appears from the evidence that the defendants now use two screens, the first, or upper one, catching the coarse coal, and the second, or lower one, catching the fine coal. The defendants contend that they are only chargeable with the agreed price for the coal which is caught by the first or upper screen, and that they may carry away and appropriate to their own use the coal which is caught by the second or lower screen without paying anything therefor. The controversy is wholly as to this latter quality of coal. The court permitted the defendants to introduce evidence to show what was understood, among coal miners and dealers in coal, by the words " screened coal." No question is presented under the special finding. It does not appear to have been made at the request of the parties or any of them. We will consider the case upon the questions arising under the motion for a new trial.

The lease was originally given to Teter and Samuel S. Williams, and the defendants succeeded them as their assignees. The plaintiff testified that at the time the defendants took possession, and before that time, there was but one screen used at said mine for screening coal, the lessees, Teter and Williams, and lessees before them, having used but one screen for cleaning coal up to that time. The width of the meshes or spaces between the bars of said screen was one-half inch. Shortly after defendants took possession of said premises, they remodelled the old screen, but did not mate-

rially change the width of the meshes or spaces between the bars, but above and immediately over the old remodelled screen, they erected and put up a large screen. He found out in two or three months after defendants put up the large screen over the old screen, that they were not paying him for any coal except that caught on the upper, large screen. He then demanded of them the rent or royalty on the coal caught on the under screen also, but defendants refused to pay for that coal. He insisted that he was entitled to the rent on all coal caught on the screen, or a screen of the size of the one in use when they took possession, and on which his immediate lessees, Teter and Williams, had been paying him rent. But defendants refused and claimed that they ought only to pay on the coal caught on the large, upper screen, which they erected. From May, 1870, to January, 1872, the time of the commencement of this suit, the defendants have received and shipped from the premises four hundred and fifteen car loads of coal of the quality and grade produced by the lower screen. A car load contains three hundred bushels. * * * He regards the coal caught on the lower screen as the best coal in the market for many purposes. One-third of all the coal dug and mined at the premises is caught on the under screen. * ' * He calls the coal caught on the large, upper screen "coarse lump, or grate coal," and that caught on the lower screen, under the present arrangement, "nut coal." Both grades are "screened coal." Both grades were caught on the lower screen, and he got pay for them when only the one screen was used. He called the coal caught on and passing over that screen, "screened coal." He now called both these grades "screened coal," one grade, the product of the large screen, he called "screened grate coal," and the other "screened nut coal."

William R. Smith testified that he made the large screen used by the defendants; that the spaces between the bars are seven-eighths of an inch at the top, and one and an eighth inch at the bottom; that he had since measured

them and found that they were one and three-sixteenths of an inch apart all the way down uniformly.

Joshua Cole testified that the spaces between the bars of the large, upper screen were found on measurement by him a few days ago to be, in some places, one and a quarter inches, but across the upper and lower middle, they measured one and three-sixteenths of an inch; that such were the average spaces. Some pretty large pieces of coal fall through the upper screen and are caught on the lower screen. The second screen produces " nut coal," and the upper "grate coal." He has had some experience in working about coal mines. This witness exhibited some specimens of coal, that were held up edgewise and dropped between the bars of the upper screen. They were from one inch to three and four in length and three or four inches wide.

Nathan J. Williams: Was interested in working the mine in question before the lease of it to Teter and Samuel S. Williams; while he worked it they used only one screen, and that was the same size between the bars as the screen now used by defendants as the under, or lower screen. The size of the screen used by witness was one-half inch at the upper end. They used but one screen and produced only one grade of coal. They had no screen separating the nut coal from the coarse coal, but caught both kinds together in the same screen. This same screen was used by Teter and Samuel S. Williams until they sold to the defendants. Shortly after the defendants took possession, they put up an additional screen over the old screen, much larger and wider between the bars. The under screen now used by the defendants is the same sized screen as the old one. The coal caught in the large upper screen is " coarse," or " grate coal," that caught in the lower is " nut coal;" has had some experience in the coal business; about one-third of the coal mined at this mine is caught in the lower screen; that which falls through to the ground is called " slack." It is the dust, sulpher, clay, etc., separated from the coal.

Samuel S. Williams: Is one of the parties to whom the

lease in question was made; they had but one screen, one-half inch at the top and three-fourths of an inch at the bottom between bars. The defendants remodelled this screen, but left the spaces the same, and put over it a larger screen with spaces twice as large as the other. The spaces in it are one and three-sixteenths inch wide. One-third, at least, of the coal falls through the upper screen, and is caught by the lower screen. By this arrangement, the defendants make two grades of screened coal. That which is caught on the upper screen is called " coarse," "grate," or " lump coal;" that which is caught on the lower screen is called " nut coal;" and that which falls to the ground is called "slack," for which he knows of no regular market. Where only the lower screen was used, the coarse and the nut coal passed over together. The defendants now make one car load of nut coal to every two or two and a half of coarse coal. He calls that slack which passes through both screens to the ground; he knows the under screen now used by the defendants is the same size as that used by him; he knew that the defendants refused to pay the plaintiff for the coal which was caught on the lower screen; he calls both grades of coal "screened coal." The nut coal for many purposes is as good as the other.

This was the plaintiff's evidence. The defendant leased, and it was conceded by the plaintiff that he had transferred to another one-fourth of one cent per bushel, or one-third of the royalty or rent reserved by the lease, so that he was only entitled to one-half of one cent per bushel.

Joseph Summers testified that he was one of the defendants. The old screen was one-half inch round rods; does not know the width of the spaces; the large screen is six by three feet; the meshes when it was put in were seven-eighths of an inch wide at the bottom, and three-fourths of an inch at the top, but he was not certain as to the size; since then they had enlarged it to seven-eights of an inch all the way between the bars. The lower or under screen is one-half inch wide between the bars, and it is right under the upper

screen; when they took possession there was but one screen; the coal is bituminous; has been engaged in coal operations since 1860 or 1861 ; screened coal means grate or screened coal; to get coal for market, it takes a screen from seven-eighths to one inch mesh, from seven to eight feet long, and from three to three and a half feet wide. They used two screens, one to get nut coal, which runs over second screen. In 1869, there were two banks in that locality using two screens; the second screen was not in general use at that time. Slack sells at from five to sixteen dollars per car load, coarse coal from seventeen dollars and fifty cents to twenty dollars, and nut coal from eight to nine dollars per car load. After he took possession, there was a change made in the mode of screening. Formerly it was screened in the bank; now by the second screen. The meshes ought not to be less than an inch to make good coal; the usual screen is seven-eighths mesh. The plaintiff was back and forth while the changes were being made at the bank; he said to witness, it was a good job and was being put up in good shape; they had settlements monthly, and nothing was said about nut coal for six months. He talked about making another company pay him for nut coal; does not know how much nut coal was shipped; thinks one-fourth of all the coal is nut coal; one-third goes to nut and slack. We only pay the miners for the coal run over the upper screen, and not for the nut coal. He did not know the usual size of the meshes of screens; did not say that there was any established size; every man makes his own screen according to his own notion as to width of meshes. I have seen the screens at six or eight mines.

B. F. Williams: Described the screens used by the defend-ants, and stated that the words "screened coal" meant that coal which passed over the first or upper screen. This wit-ness was also allowed, over the objection of the plaintiff, to testify that he had measured the screens then in use in that locality with the view of determining the width of the meshes, and after referring to his memorandum book stated the average width at seven-eighths of an inch and one six-

teenth of an inch added thereto. The screens at different banks vary from one inch and an eighth to seven-eighths of an inch in width. He did not know of any established rule in that locality for the meshes of screens; his only knowledge was from measuring screens with reference to his evidence on this trial. He had been in the coal business for a number of years.

John Andrews: Had mined coal for thirty-five years and dealt in coal in Scotland, and in this country for nine years in Clay and Vigo counties, in bituminous coal, and knew the universally accepted meaning of the term screened coal. It is the large coal sifted from the small and dirt. The operators began using the second screen about three years ago. It is only used once in a while now; he was acquainted with the customary width of meshes of screens; they are one inch and less; he did not know of any uniform rule among miners as to the width of meshes. It is nine years since he worked in bituminous coal. A nut coal screen has one-half inch meshes; did not know of any established rule as to the meaning of the words screened coal at the date of the lease in this case.

A. B. Ashley, who had no knowledge of the size of meshes of screens until after the date of the lease, was allowed to prove the width of meshes in screens in use in 1870 and afterward, over the objection of the plaintiff. He says by screened coal is meant large coal, screened from small and slack. The slack is small coal and dirt; screened slack produces "nut coal." They make five cars of coarse coal to one of slack or that which falls through the first screen.

W. M. Morris. Came to this country in 1851; has mined coal in Ohio, Indiana, and Illinois; has lived in Clay county since 1868; he never was in the bituminous coal region at Highland; knew the usual size of screens in Ohio for this kind of coal. Each mine regulated the size of the mesh according to the cars used in the banks; screened coal is universally understood to mean coarse or merchantable coal, and that which passes over the first screen; slack is what falls through;

nut coal is what is caught on the second screen; has had no experience in Clay county bituminous coal.

B. F. Masten: " Screened coal" is that which passes over the first or upper screen; that which passes over the second, screen is " nut coal" or " screened slack." These were the meanings of the terms in 1869. This witness was also allowed to state over the objection of the plaintiff, that when miners are employed to dig by the ton they were paid only for " screened coal." If there is no upper screen, the coal caught on the one screen is " steam coal;" only know of two mines using two screens in 1869, all others used but one.

Joseph Carmichael testified, that when only one screen was used, he called the coal caught on it " screened coal;" called the coal caught on the lower screen " screened nut coal."

Farmer James: Screened coal is where the slack is taken out; does not know of any established rule as to width of spaces between the bars of coal screens.

John M. Bailey: There is no uniform rule for spaces between the bars of screens. In 1869, screened coal meant coal caught on upper or large screen.

Benj. Tribble: The size of screens has varied since 1869. Before 1869, they screened and raked the coal in the mine, and then ran the coal over a single screen at the top of the pit. In 1869 screened coal meant what ran over the first screen. In 1869 only two banks in all that region used two screens. All that fell through the screen was called slack. Does not know the usual size of the screens. They are not all the same size or width of mesh. They are from seven to nine feet long, three to four feet wide, and the meshes from seven-eighths to one and a quarter inches wide. There is no established rule for the width of meshes. Screened coal is classified into " grate" and " nut coal."

Christian Ehrlich testified, that the size of the meshes of the screen depends on the quality of coal emptied on the screen.

The defendants examined several other witnesses and

read depositions of coal dealers in Indianapolis, but the facts disclosed by them do not essentially vary the case as made by the witnesses whose testimony we have set out.

We are of the opinion that the evidence, conceding that it was all properly admitted, fails to make out the case according to the theory of the defendants. It is shown that only one screen had been used at this mine by the first lessees of the plaintiff; that the lessees in this lease used but one screen, and that the defendants at first used but one screen. These parties all used a screen with meshes of the same size. At the time this lease was made, nearly all those engaged in mining used but one screen. It may well be inferred under these circumstances, that the parties intended to contract with reference to the state of things then and theretofore existing, and that in using the words " screened coal," they intended them to apply to such coal as was then considered and denominated screened coal, and that they meant such coal as passed over the single screen then in common use, and then and previously in use at this particular mine.

It also seems to us that there was and is no definite standard of screens for screening coal, with reference to the size of their meshes. This very clearly appears from the evidence. Even Summers, one of the defendants, testifies that " every man makes his own screen, according to his own notion as to the width of meshes ;" and he had seen screens at six or eight mines. If there is no fixed and regular size for the meshes of the screens, it must follow that there is no uniformity in the size of the particles or pieces of coal forming what is called screened coal. On the subject of the validity of usage or custom and its application in the interpretation of contracts, see *Cox* v. *O'Riley*, 4 Ind. 368; *Harper* v. *Pound*, 10 Ind. 32 ; *Wallace* v. *Morgan*, 23 Ind. 399; *Biddle* v. *Reed*, 33 Ind. 529 ; *The Union Railroad, etc., Co.* v. *Yeager*, 34 Ind. 1 ; *Rafert* v. *Scroggins*, 40 Ind. 195.

In this particular case, it is difficult to see the justice of the position assumed by the defendants. The former lessees

paid for all coal passing over the screen corresponding with. the lower screen used by the defendants. Such was the case also as to the lessees mentioned in this lease. After the defendants had succeeded to the rights of the lessees, instead. of paying as their predecessors had done, they erected a. coarser screen above the one previously in use, by which. from two-thirds to three-fourths of the coal is caught, while the former screen catches one-third or one-fourth of it, and. they claim that they are liable to pay for only that which is caught by the coarser screen. In this way, they get, if their position can be sustained, one-third or one-fourth of the coal. formerly paid for, without paying anything therefor. Whatever may be said about the coal now caught on the second, or old screen, it is in fact screened coal, as much as the other. It. is a part of the coal which was caught on the screen as it: was when the lease was made, and is a part of the coal. caught on the screen and paid for by the lessees, the assign-- ors of the defendants. The putting up of the new or addi-- tional screen enables the defendants to catch precisely the same coal that was caught by the single screen, but it is sep-- arated thereby into two grades or sizes. In our opinion, the judgment should be reversed on the evidence.

The judgment is reversed, with costs; and the cause is remanded, with instructions to grant a new trial.

Opinion filed November term, 1873; petition for a rehearing overruled May term, 1874.