Spears *et al. v.* Ward *et al.*

## SPEARS ET AL. *v.* WARD ET AL.

48 541
126 245
48 541
146 300

48 541
160 140
48 541
163 447

PLEADING.—*Complaint.—Prayer.—Damages Claimed.*—It is not necessary to state the amount of damages claimed at the conclusion of each paragraph of a complaint; it is sufficient to state the amount demanded at the conclusion of the complaint.

SAME.—*Common Count for Money Received.—Demand.*—A common count for money received, etc., alleging the amount and day on which it was received, is good without a bill of particulars or an allegation of demand.

CONTRACT.—*Construction.—Ordinary Signification of Words.*—A court must ascertain the ordinary signification of words in a written contract, without the aid of witnesses.

CUSTOM.—*Coextensive with State.*—No particular custom, unless it is coextensive with the State, should be allowed to affect a general law.

SAME.—*When Parol Evidence of Custom not Admissible.*—When a written contract is expressed in plain and common words, and the subject-matter is familiar in the business of life, parol evidence of a local custom is inadmissible to change, modify, or aid in its construction.

From the Tippecanoe Civil Circuit Court.

*W. C. Wilson, J. H. Adams, J. R. Coffroth,* and *T. B. Ward,* for appellants.

*R. C. Gregory, S. A. Huff,* and *B. W. Langdon,* for appellees.

BIDDLE, J.—This suit was brought by the appellees against the appellants, as surviving partners of Spears, Case & Co., on a written contract, made May 30th, 1871, by which the firm agreed to deliver to the appellees, at Francesville and Ward's Scales, near Bradford, Indiana, between the 5th and 25th of October, 1871, two hundred head of " fat, smooth, merchantable, and native steers," to average twelve hundred pounds, gross weight, none to weigh less than one thousand pounds ; for which they were to receive four dollars and fifty cents per hundred pounds, gross weight; of which amount they received, at the date of the contract, one thousand nine hundred dollars. Breach, non-delivery of the cattle.

A second paragraph in the complaint alleged, that the appellants and Reed Case, their deceased partner, on the 30th day of May, 1871, received from the appellees nineteen hundred

dollars for their use, and wrongfully keep the same; demanding judgment for three thousand dollars.

Separate demurrers were filed to each paragraph of the complaint, for the want of sufficient facts. These were overruled, and exceptions taken.

The appellants answered:

1. General denial.

2. That within the time, and at the places mentioned, they tendered the steers according to the contract, which the appellees refused to accept; that afterward, the appellants, on giving notice to the appellees, sold the same in open market, and realized thereon a sum which, including the nineteen hundred dollars they had already received, left in the hands of the appellants one hundred and eight dollars and sixty-nine cents; and they brought into court the sum of one hundred and fifteen dollars, which they tendered to the appellees, and prayed to be discharged; all of which is pleaded, with proper averments.

A demurrer was filed to the second paragraph of answer and overruled, to which decision the appellees excepted. Afterward, a reply was filed, issue joined, and a jury trial had, which resulted in a verdict for appellees. Motion for a new trial by appellants overruled; exception; judgment on the verdict; appeal.

Three errors are assigned:

1. Overruling the demurrer to the first paragraph of complaint.

2. Overruling the demurrer to the second paragraph of complaint.

3. Overruling the motion for a new trial.

The objection taken to the first paragraph of the complaint is, that it does not state any amount of damages, but simply avers, that " the plaintiffs were damaged." It is not necessary to state the amount of damages claimed at the conclusion of each paragraph of the complaint; it is sufficient to state, as is done in this case, the amount demanded, at the conclusion of the complaint. The demurrer to the first paragraph of the complaint was properly overruled.

It is alleged, against the second paragraph of the complaint, that it is a count for money had and received, and is not accompanied with a bill of particulars; and that it does not add a demand before suit brought.

As to nineteen hundred dollars, received on the 30th of May, 1871, it is sufficient, without any further bill of particulars. It shows neither trust, bailment, agency, nor any of those relations between the parties which make a demand before suit necessary. There was no error, therefore, in overruling the demurrer to the second paragraph of the complaint.

No question is made on the second paragraph of the answer.

During the trial, the appellants asked competent witnesses the following questions:

" 1. Have these words, taken together, to wit, ' a lot of two hundred cattle, to average twelve hundred pounds gross, none to weigh less than one thousand pounds,' and further, that ' said cattle shall be fat, smooth, merchantable, native steers, three and four years old,' any particular meaning amongst cattle dealers and traders, by the custom of such traders and dealers?

" 2. According to the rules of the cattle trade and the understanding among cattle dealers, what is the meaning of the expression, ' a lot of two hundred cattle to average twelve hundred pounds gross, none to weigh less than one thousand pounds,' and further, that ' said cattle shall be fat, smooth, merchantable, native steers, three and four years old?'

" 3. Has the expression, ' a lot of two hundred cattle, to average twelve hundred pounds gross, none to weigh less than one thousand pounds,' and further, that ' said cattle shall be fat, smooth, merchantable, native steers, three and four years old,' any meaning, according to the rules and customs of the cattle trade, and the understanding among cattle dealers, in the neighborhood in question, of a definite and particular character? If so, state it.

" 4. State whether or not it is the immemorial custom and

usage among cattle dealers, in the neighborhood in question, in making contracts for the purchase or sale of cattle, of the grade specified in this contract, to insert in such contract, as descriptive of such kind of cattle, these words : ' native steers, three and four years old, averaging twelve hundred pounds gross, none to weigh less than one thousand pounds, fat, smooth, merchantable cattle ;' and have not these descriptive words, according to the immemorial and universal usage of the cattle trade, and the understanding among cattle dealers in said neighborhood, a peculiar, special, and definite meaning, different from their ordinary and popular significa- tion ? If so, state what that special and peculiar meaning is.

" 5. According to the immemorial custom, usage, and under- standing in the cattle trade and among cattle dealers in the neigh- borhood in question, state whether or not the following words, to wit: ' native steers, three and four years old, averaging twelve hundred pounds gross, none to weigh less than one thousand pounds, fat, smooth, merchantable cattle,' have a special, peculiar, and definite meaning, different from the ordi- nary and popular signification ? If so, state what that special and peculiar meaning is."

These questions were severally objected to by the appellees, their objections sustained, and the appellants excepted to each ruling.

Question 1 asks whether the words referred to have any particular meaning by the custom amongst cattle dealers and traders; question 2 asks what is the meaning of the words, according to the rules of the cattle trade; and question 3 inquires whether they have any meaning, according to said rules and customs, in the neighborhood in question, of a defi- nite and particular character.

It does not appear that these questions are calculated to elicit any other meaning of the words in the contract than their ordinary signification. This the court must ascertain without the aid of witnesses. We think the court did not err in sustaining the objections to these three questions.

The exceptions taken to questions 4 and 5 fairly raise the question, can an immemorial custom of the cattle trade, well known and understood by cattle dealers in the neighborhood where these steers were to be delivered, be admitted as evidence to the jury to change, modify, or aid in the interpretation of the written contract under consideration?

The common law is a system of general customs applicable to the rights of man in all the various pursuits and relations of life. Besides this general system of customs, there are particular customs which are confined to some particular business, trade, or pursuit, or to some certain locality, and which are sometimes allowed to change, modify, or aid the system of general customs known as the unwritten or common law. On this ground, we have examined all the cases cited on behalf of appellants. But few of them are decisions on written contracts, and these are where the contract is to be aided or explained by the custom, and not contradicted, or the meaning of the words changed from their ordinary and received signification. In the case *Lowe* v. *Lehman*, 15 Ohio St. 179, on a contract to furnish and lay up good and merchantable brick in the wall for six dollars and twenty-five cents per thousand, the custom of builders was allowed to show that the brick were to be measured in the wall instead of counted. So in *Soutier* v. *Kellerman*, 18 Mo. 509, a well known and established custom was allowed to show that two packs of shingles of a certain size were counted as a thousand without reference to their actual number. In these cases the custom was not allowed to change the meaning of the words in the contract, but simply to measure numbers by quantities. In the cases of *Hibler* v. *McCartney*, 31 Ala. 501, and *McClure* v. *Cox*, 32 Ala. 617, a custom was allowed to show that in the transportation of cotton, the words " dangers of the river," as used in a bill of lading, also included dangers by fire. Cotton, being a substance so easily ignited and so difficult to be extinguished, and necessarily exposed on a steamboat to the sparks and fire of the chimneys and flues, the custom allowed

was peculiarly applicable to river navigation.    In the case of ·Cuthbert v. *Cumming*, 30 Eng. Law & Eq. 604, the words, ·" a full and complete cargo of sugar and molasses," in a contract made at London, the custom at Trinidad, where the vessel was laden, was allowed to show what constituted " a full and complete cargo " at the latter place.

In the three cases last cited, it is plain that the custom was allowed to explain, but not to contradict, the contract.    In the English case, COLERIDGE, J., says:

" The last consideration is, whether the custom is one controlling, altering, or inconsistent with the written contract, ·or whether it is merely explanatory of it.    It appears to me to amount to nothing more than this, it explains what is the meaning of the term ' full and complete cargo.' "

The first case in our own reports, in which the application of a custom or usage is mentioned, is *Rapp* v. *Grayson*, 2 Blackf. 130; but the case is not fully reported, and gives us no aid in this question.    The case of *Cox* v. *O'Riley*, 4 Ind. 368, is not decided on a written contract, but throws some light on the question of admitting customs and usages in evidence to affect contracts.    The court say:

" A usage of trade may be proved to aid, in a case of doubt, in construing a contract, or determining upon the manner of discharging some duty or performing some act; but to give it controlling effect, it must be shown to be a long continued, uniform, and generally known usage.    *   *   *    A usage in conflict with plain, well established rules of law, is not admissible in evidence in any case, and must be disregarded."

.   The court also intimates very strongly that the growth of local usages is not to be encouraged, an opinion with which we fully agreee.    In *Harper* v. *Pound*, 10 Ind. 32, a custom of the locality was offered in evidence, to explain the words " to clear out the field," and denied, the court remarking that " a contract for clearing land might thus be made to mean one thing in Posey county, and quite another in Steuben or Lake.    *   *   The policy of the State is to have all her. localities a unit—the same law and the same rule of decision

prevailing everywhere throughout the State. Perhaps it is not too much to say that a good usage or custom in this State should, in addition to the common law requisites, be shown to prevail all over the State, regarded as a single locality."

In *Wallace* v. *Morgan,* 23 Ind. 399, a custom of commission merchants in Indianapolis, to forward to New York, for sale, flour of a certain grade, unsuitable for the Indianapolis market, was pleaded, and was held insufficient.

In *Atkinson* v. *Allen,* 29 Ind. 375, it was attempted to be shown by a custom amongst pork dealers, that, when hogs were slaughtered on joint account, the party slaughtering them was entitled, to the exclusion of the other party, to the profits on the sales of the bristles, gut fat, and grease, when the written contract was silent upon the subject, but it was held to be inadmissible.

A custom in the city of Fort Wayne, showing that the lessor was bound to repair the building let when there was no covenant for repairs in the lease, was, in a pleading, held insufficient. *Biddle* v. *Reed,* 33 Ind. 529.

In *Rafert* v. *Scroggins,* 40 Ind. 195, this court cites *Harper* v. *Pound, supra,* and *Atkinson* v. *Allen, supra,* approvingly, and adds, that "it may well be doubted whether a custom can be held valid unless it be coextensive with the boundaries of the State."

In the history of the State, we have been unable to find a single case in which a particular custom was allowed to control, change, modify, or in any way affect a written contract. It is but a quarter of a century since local laws had become so great an evil as to call for constitutional prohibition, and courts should not admit that to be done indirectly by a particular custom, which could not be accomplished by direct legislation. We are of opinion that no particular custom, unless it is coextensive with the State, should be allowed to affect a general law.

The contract under consideration is expressed in plain and common words, the subject-matter is one of the most familiar

in the business of life, and we think the court committed no error in refusing the evidence offered by the appellants.

The evidence is all before us in a bill of exceptions. We have studied it carefully. It is somewhat conflicting, and doubtless would be again if a new trial was granted. The subject-matter is one about which candid and intelligent witnesses will differ in some degree. The parties had full liberty, up to the limits of their rights, to contest the question as to what constituted " fat, smooth, merchantable, and native steers," at the places of delivery. Thus far they had a right to interpret the meaning of the contract by facts. They have done so, and we think the preponderance of the evidence is with the verdict. There is no error in the record.

The judgment is affirmed.