## THE FRANKLIN INSURANCE COMPANY OF INDIANAPOLIS *v.* HUMPHREY ET AL.

FIRE AND MARINE INSURANCE.— *Wharf-Boat.— Loss by Ice.—Terms of Policy.*—An insurance company issued a policy to the assured, in a certain sum, " against loss or damage by fire, * on his wharf-boat, tackle and apparel lying at the wharf of the city of Evansville, Indiana, * and to receive, discharge and store freight, hazardous, extra-hazardous and specially hazardous. It is understood that the loss, if any, shall be adjusted according to the conditions herein contained, and those hereto attached." The conditions " attached" were as follows, viz. : " Touching the adventures and perils which the said insurance company is contented to bear and take upon itself in this voyage, they are of the seas, lakes, rivers, canals, fires, jettisons, rovers and assailing thieves."

The Franklin Insurance Company of Indianapolis *v.* Humphrey *et al.*

*Held,* in an action on the policy, that the company was liable for a loss occurring by means of ice floating against and destroying the boat insured.

SAME.—*Evidence of Custom.—Removal to Ice Harbor.*—Evidence in such action was inadmissible to prove a custom prevailing at Evansville of removing property of the character of that insured from that place to a neighboring ice harbor, for safety during the season of "running ice."

SAME.—*Notice by, and Assent of, Company, to Remove.*—Evidence was likewise inadmissible in such action, to prove a notice, by the company to the assured, to so remove the property assured, an offer by the company to accept the risk occasioned by the removal, and that such removal would have been safe.

SAME.—*Fraud.—Negligence.*—The failure of the defendant, even though wilful, to so remove the property insured, constitutes neither fraud nor negligence.

From the Posey Circuit Court.

*C. A. DeBruler* and *E. R. Hatfield,* for appellant.

*A. Iglehart, J. E. Iglehart, A. Gilchrist* and *C. H. Butterfield,* for appellees.

BIDDLE, J.—Suit by the appellees, upon an insurance policy alleged to have been made by the appellant to Francis M. Humphrey, for the benefit of his mortgagees, insuring a wharf-boat against loss or damage by fire, and other perils, averring, that, by a large sheet of ice floating in the Ohio River, the boat was carried away, wrecked, burned and wholly destroyed, without the fault or negligence of the appellees.

A demurrer, alleging the want of facts sufficient to constitute a cause of action, was overruled to the complaint, and exception reserved.

Answer in five paragraphs.

The first paragraph avers, in substance, that, long before the loss happened, the Ohio River, in which the wharf-boat was lying, at Evansville, became encumbered with floating ice to such an extent that it became dangerous and hazardous to permit the wharf-boat to remain longer where it was, because, if the river closed, the breaking up of the ice would almost certainly sink and destroy the

boat; that Humphrey, the assured, was the master and owner of the wharf-boat, and in the actual control and possession thereof, and that, under the circumstances, it became his duty to remove it to a place of safety; that Green River, which empties into the Ohio at a point about eight miles above Evansville, is such a place of safety, being a perfect ice harbor, and is the nearest and most accessible place of safety that could be found, and that, on the 18th of December, 1876, the insurance company gave Humphrey a written notice to remove the wharf-boat into Green River, and by its agent frequently requested him verbally to do so, and warned him that the boat would be sunk if permitted to remain longer where she was; and that, for ten days after such notice was given, the wharf-boat could have been easily and safely towed to Green River, and moored therein, and thenceforth would have been perfectly safe; and if that had been done the loss would not have occurred; that Humphrey carelessly and negligently failed and refused to move the boat until the river became completely frozen over, and that, when the ice broke up, on the 16th of January, it was carried by the current in large masses against the wharf-boat, tore her loose and destroyed her; and, therefore, that the loss occurred through the gross negligence of the assured (who was master and owner), and the company is not liable.

The second paragraph is the same, except that the refusal of Humphrey to take the boat to Green River is charged to have been fraudulent, the language being as follows:

"But the said Humphrey fraudulently intending and designing that the said wharf-boat should be sunk by the ice, in order that he might recover the insurance money thereon, purposely kept said wharf-boat in said exposed and dangerous locality, well knowing that the same would be sunk when the ice broke up in the Ohio River, and so

fraudulently and designedly suffered said wharf-boat to remain at the wharf at Evansville aforesaid, so that, when the ice, at the time mentioned in the complaint, to wit, January 16th, 1877, broke up in said Ohio River, it was carried by the current in large masses against said wharf-boat," etc., "and destroyed it; whereupon defendant says that the loss occurred by the connivance, purpose and design of said Humphrey," and that it is not liable.

The third paragraph of the answer is a general denial.

The fourth paragraph avers, precisely as the first and second, the facts in regard to the condition of the river, the danger and hazard of permitting the wharf-boat to remain at Evansville, the practicability of towing her to Green River, and the duty of Humphrey, in the exercise of ordinary care and diligence, to take her there; the safety of Green River ice harbor, the notice by the company to Humphrey, both written and verbal, to take her to Green River, and the warning that, if permitted to remain at Evansville, she would inevitably be destroyed; and that the company also "notified the plaintiffs, that, unless they so moved the said wharf-boat, the defendant would not be responsible for the loss thereof, and notified the plaintiffs that the defendant company would take all the risks of loss attending the removal of said wharf-boat to a place of safety;" and it is then alleged that the plaintiffs agreed and promised to take the boat to Green River; that, for ten days thereafter, it could easily and safely have been so taken, and that it would then have been safe; but that plaintiffs negligently failed and refused to move it, and so it was destroyed by the ice, when, if their promise to remove it had been kept, the loss would not have happened.

The fifth paragraph of the answer recites a provision of the policy, by which it is made the duty of the assured to labor in and about the safeguard and protection of the said wharf-boat in case of any misfortune happening, and

it is then averred, that, three days before the wharf-boat was carried down the river, it broke loose from the place where it was moored, and was caught by other parties than the assured, tied to the shore, and possession taken by the assured and watchmen placed in charge; but that the assured, Humphrey, designing that the boat should be lost, negligently and fraudulently failed to fasten the boat to the shore, and although, as Humphrey well knew, it was necessary to fasten it to the bank with more than one line, or with chains, or both, as was usual and customary, he fastened her with only one line, and that an old and rotten one; that the line broke, the watchman abandoned the boat, and so she floated fifty miles down the river, was then caught and tied, and afterwards burned, "said Humphrey having in no wise taken any care thereof."

A reply in several paragraphs was filed to the answer; issues joined; trial by jury; verdict for appellees; judgment on the verdict; and appeal to this court.

By a motion for a new trial, and the demurrer to the complaint, the appellant has presented several questions for our consideration.

1. As to the sufficiency of the complaint:—

It is not claimed that the complaint lacks any necessary averment, or that any averment which it contains is insufficient; but it is insisted that the policy declared upon does not cover a loss by the means averred in the complaint; that it insures only against loss or damage by fire, and does not insure against a loss by the perils of the Ohio River.

The language of the policy is as follows :

"By this policy of insurance the Franklin Insurance Company of Indianapolis, Ind., in consideration of the receipt of one hundred dollars, do insure F. M. Humphrey against loss or damage by fire to the amount of two thousand dollars, on his wharf-boat, tackle and apparel lying at

the wharf of the city of Evansville, Indiana, privilege $4,-000, total insurance, and to receive, discharge and store freight, hazardous, extra hazardous and specially hazardous. It is understood that the loss, if any, shall be adjusted according to the conditions herein contained, and those hereto attached."

The conditions attached were as follows :

" Touching the adventures and perils which the said insurance company is contented to bear and take upon itself in this voyage, they are of the seas, lakes, rivers, canals, fires, jettisons, rovers and assailing thieves."

It appears from an averment in the complaint, and by the argument of the appellant, that the parties adopted the form of a fire policy, and that the conditions thereto " attached " were adopted from the form of a marine policy, thus making it really both a fire and marine policy. This, doubtless, accounts for its apparent incongruity. Upon this ground, the appellant argues that " there are no direct words of insurance against marine perils to be found in the contract; " that " the wharf-boat was not built to make voyages, but to serve as a floating warehouse for the storing of freight ; " that " no voyage was contemplated, or in the nature of the case could be made, and hence the ' adventures and perils ' enumerated were never in fact assumed by the company." But we are unable to view the policy in that light. The fair construction and plain meaning of the policy, when all its parts are taken together, is, that the appellant insured the wharf-boat of the appellee Humphrey " against loss or damage by fire," and against loss or damage by the perils " of the seas, lakes, rivers, canals, jettisons, rovers and assailing thieves." The fact that the wharf-boat was not adapted to navigation, and could not, and was not intended to, make voyages, or enter upon the seas, lakes or canals, but was insured " lying at the wharf of the city of Evansville, Ind.," in the Ohio River, will not

vitiate the policy as to other perils; and the insurance against "jettisons, rovers and assailing thieves," might be as applicable to a wharf-boat as to a boat calculated to make voyages. That the destruction of the boat by the ice, as averred, was by a peril of the Ohio River, is not disputed. We think the complaint is sufficient.

2. On the trial, after the appellees had rested, the appellant introduced as a witness John H. Morris, who was duly sworn, and by whom appellant offered to prove the following facts:

" That witness was the owner and master of the tow-boat 'Hotspur,' and had his boat at Evansville when ice began to form and float in the Ohio in December, 1876; that Green River empties into the Ohio eight miles above Evansville, and is a perfect ice harbor and peculiarly adapted to the safety of boats threatened by the ice, and the only ice harbor on the Ohio within reach; that this fact was well known and universally understood among all river men, and that it is, and was in December, 1876, and has been from time immemorial, the well understood, universal, and perfectly well known custom among all river men, owners and masters of wharf-boats, etc., to take all such boats and wharf-boats to the mouth of Green River upon the approach of danger from floating ice in the Ohio River, and that such custom and usage was in full force on the 4th day of November, 1876, and was well known to all river men and all business men generally, in the city of Evansville; that, at any time in the month of December, 1876, up to the 25th, Humphrey's wharf-boat— the subject of the insurance in this action—could easily have been towed and taken by the said tow-boat 'Hotspur' to Green River; that said 'Hotspur' was, during the month of December, 1876, at various times up to the 25th, engaged in towing various crafts to the mouth of Green River, from the wharf at Evansville, and on Sunday, De-

cember 18th, 1876, did so tow a large wharf-boat owned by Rankin & Co., and a few days thereafter another large wharf-boat, and that Humphrey's boat, the one in controversy, would not have been much harder to tow than either of those; that said Humphrey did procure another wharf-boat, owned by him, to be towed to Green River in December, 1876, about the middle of the month; that ice began to form in the Ohio about December 8th, 1876, and that, at many times thereafter, the river was clear of ice between Evansville and Green River, before the loss complained of happened; that witness has been engaged in river business, in various capacities, for the past ten years."

This testimony was objected to by the appellees, and excluded by the court, to which appellant excepted.

The facts above stated, and offered to be proved, lack some of the essential requisites necessary to the validity of a particular custom at common law, as that it was continued without interruption, was peaceable and acquiesced in, and was compulsory and binding upon all, and lack an additional and important requisite to make it binding in this State, namely, that it was coextensive with the State. Perhaps it is not within the constitutional power of the Legislature in this State to make such a particular and local custom binding save by express statute; much less, then, could it be upheld by the common law. *The Franklin Life Ins. Co.* v. *Sefton*, 53 Ind. 380; *Spears* v. *Ward*, 48 Ind. 541. But the most palpable objection to the evidence offered is, that it would tend to contradict the written terms of the policy which insured the wharf-boat " lying at the wharf in the city of Evansville, Ind.," and did not insure it lying in the mouth of Green River, Kentucky, nor on its passage from where it was insured, to and from the mouth of Green River. It is not contemplated that a wharf-boat, which is a floating dock and warehouse com-

bined, for the purpose of receiving, storing and shipping goods, is to be removed from the waters in which it is built, and the place to which it is adapted. The owner is entitled to the use of his wharf-boat at the place where it is designed to remain, as well in the winter time, if he then can and desires to use it, as he is during the boating season; and it might be that a removal of the wharf-boat, as contemplated by the facts offered to be proved, if made without the consent of the insurer, would have been such a deviation from the proper use of the boat, as to avoid the policy, if it had been lost at any other point than that at which it was insured, and where it was designed to remain.

The appellant has offered much argument, and cited many authorities, to show us, that, where the loss of insured property is caused by the wrongful act of the insured party, he can not recover on the policy. We are not differing from the appellant in this view, but the facts offered to be proved in this case, do not tend to show a wrongful act on the part of the appellees, nor even negligence. Wood Ins., pp. 108 and 221, and authorities there cited; May Ins. 493, 499; *Copeland* v. *New England Marine Ins. Co.*, 2 Met. 432; *The City Fire Ins. Co. of N. Y.* v. *Corlies*, 21 Wend. 367; *Dixon* v. *Sadler*, 5 M. & W. 405; *Leeds* v. *The Mechanics' Ins. Co.*, 8 N. Y. 351; *Equitable Ins. Co.* v. *Hearne*, 20 Wal. 494; *Ins. Co.* v. *Wilkinson*, 13 Wal. 222; *Cincinnati Mutual Ins. Co.* v. *May*, 20 Ohio, 211; *Hill* v. *Portland & Rochester R. R. Co.*, 55 Me. 438; *Mickey* v. *The Burlington Ins. Co.*, 35 Iowa, 174; *Luce* v. *Dorchester Ins. Co.*, 105 Mass. 297; *Dudgeon* v. *Pembroke*, 10 Eng. R. (Moak's Notes) 192; *Gove* v. *The Farmers' Mutual Fire Ins. Co.*, 48 N. H. 41; *Huckins* v. *The People's Mutual Fire Ins. Co.*, 11 Foster, N. H. 238; *Howland* v. *The Marine Ins. Co.*, 2 Cranch C. C. 474; *Hazard's Adm'r* v. *The New England Marine Ins. Co.*, 8 Peters, 557.

3. The appellant then offered to read to the jury the following statement of an absent witness, John B. Hall, embodied in an affidavit for a continuance, filed by the appellant, and which statement the plaintiffs, before going into the trial, had agreed and admitted in open court, the said witness, John B. Hall, would testify to if he were present, to wit: " That the wharf-boat which is the subject-matter of the insurance herein, and for the recovery of the amount insured on which this action is brought, could, without risk or danger of the same being destroyed, have been towed to Green River, which was a place of safety, eight miles or thereabouts distant from the city of Evansville, at any time after the ice first made its appearance in the Ohio River, in December, 1876, until the 30th of said month; that tow-boats of sufficient power were at the port of the city of Evansville, and their services could have been procured to have towed said wharf-boat of plaintiffs to Green River, during the time aforesaid; that the weather during said time was calm, and there was no reason to apprehend disaster from wind, and that the stage of water in the Ohio River, between Evansville and Green River aforesaid, was sufficient for the said boat to be so towed to said place of safety; that all other wharf-boats and steamboats of any considerable size, which had been lying at the wharf at Evansville, had been removed during the time aforesaid to a place of safety; that, from the time ice first appeared in said month of December, 1876, in the Ohio River, it was apparent to all men who had knowledge of the river and its dangers, that there was great danger to be apprehended in leaving a wharf-boat at the wharf at Evansville; that the plaintiff Francis M. Humphrey was personally in charge of said wharf-boat, and had full and complete control of the same, and that it was his duty, in the exercise of ordinary care and prudence, for the purpose of preventing injury to said wharf-boat, to have removed the same during the time aforesaid, to a place of safety.

This evidence, also, was excluded by the court, upon objection of appellees, and appellant excepted.

This proposition, in principle, is the same as the second, which we have fully considered. It is not necessary, therefore, to examine the question further. The next proposition made by the appellant is also the same, and need not be stated nor considered.

4. Appellant then offered to prove by Franklin L. Whicher, a competent witness, that said Whicher was the agent of appellant at Evansville, in December, 1876, and, as such agent, on the 18th of that month, served on the appellees the written notice mentioned in the pleadings, and frequently, from the 18th to the 30th of said month, notified Humphrey to move the wharf-boat to Green River, and offered that such removal might be made at the risk of the insurance company; and also offered to read to the jury the written notice served by Whicher, its agent, on Humphrey, on the 18th of December, requesting him to take his boat to Green River, and warning him of imminent danger from the ice; and also offered to prove by John C. Shoemaker, President of the Franklin Insurance Company, that the company, at the time, ratified and approved of the act of its agent, Whicher, in notifying appellees to move the wharf-boat; but, upon objections by appellees, the court excluded the evidence, and appellant excepted.

We have seen that there was no valid particular custom, requiring Humphrey to move his wharf-boat to the mouth of Green River, and there is no general law requiring him to do so. There is no stipulation in the policy binding him to do so, and he was not bound to do so upon the notification of the appellant, and he was not bound to accept new terms of insurance, varying the policy, although offered by the company. The wharf-boat was built at the wharf at the city of Evansville, to be used at that place; it was not adapted to be removed to the mouth of Green

River, although it might have been practicable to take it there ; and at that place it might have been, and probably would be, useless to the owner while it remained. We think the owner had a right to have his boat remain in the waters where it was built, and to use it at that place for the purposes to which it was adapted. The policy insured the boat against the perils of the river at that place, and not against the lesser perils that might overtake it in the mouth of Green River.

5.  The appellant discusses the question of fraud set up in the second paragraph of answer, and insists, that, although the facts offered to be proved might not amount to any thing more than negligence which would not prevent Humphrey from recovering on the policy, yet, when a fraudulent purpose and corrupt design entered into his conduct by which he desired that the boat should be lost, "in order that the insurance money might be recovered," they amount to fraud which will prevent him from recovering on the policy ; but if Humphrey, as we have held, had a right to keep his boat at the wharf in the city of Evansville, his motive, intention or purpose in doing so could not vitiate his acts. Fraud can not be predicated upon acts which the party charged has a right by law to do, nor upon the non-performance of acts which by law he is not bound to do, whatever may be his motive, design or purpose, either in doing or not doing the acts complained of.

It seems to us that the questions in this case have been thoroughly discussed, that the case has been well tried, and that the judgment is in accordance with the law and the facts. It is therefore affirmed, at the costs of the appellant.