The late Justice STONE took no part in this decision.

---

ST. JAMES v. EMBURY-MARTIN LUMBER CO.

1. LOGS AND LOGGING—CONTRACTS—ACCOUNTING—COMPROMISE AND SETTLEMENT.
   In a suit for an accounting under a contract whereby plaintiff sold stumpage to defendant at a certain price and in addition thereto was to share in the profits when the manufactured product was sold, evidence *held*, to justify a finding of the court below that plaintiff accepted a settlement for the first two seasons on the basis of a fixed flat price rather than await an accounting and division of profits.

2. SAME—SPECIAL AGREEMENT.

  Although defendant in one season paid $3.50 per thousand above the contract price for lumbering, evidence *held*, to support the finding of the court below that plaintiff agreed to pay only 50 cents of said advance, and therefore in a division of the profits was chargeable only with said amount.

3. CUSTOMS AND USAGES—WHEN ESTABLISHED.

  A custom, to be established, must be shown to be certain, definite, uniform, and notorious.

4. SAME—MUST BE REASONABLE AND LAWFUL—PRESUMPTION OF REASONABLENESS.

  A custom, to be sustained, must be reasonable and lawful; that it is general and established, raises a presumption of its reasonableness.

5. LOGS AND LOGGING—CUSTOMS AND USAGES — SLABS BELONG TO SAWMILL OWNER.

  Evidence *held*, to establish that by custom defendant sawmill owner was entitled to the slabs and saw offal as part of the saw bill, and therefore was not required to account to plaintiff for by-products manufactured from same.

6. SAME—CEDAR LOGS TO BE ACCOUNTED FOR UNDER CONTRACT.

  The finding of the court below that the cedar logs were to be accounted for as saw log timber under the contract rather than at the market price under a special agreement, as claimed by defendant, *held*, justified by the evidence.

Appeal from Mackinac; Smith (Guy E.), J., presiding. Submitted April 5, 1922. (Docket No. 24.) Decided June 5, 1922.

Bill by William St. James against the Embury-Martin Lumber Company for an accounting. From the decree rendered, both parties appeal. Affirmed.

*Prentiss M. Brown* (*C. S. Reilley*, of counsel), for plaintiff.

*Sprague & Shepherd* (*David H. Crowley*, of counsel), for defendant.

CLARK, J.   On August 13, 1915, the parties entered into the following contract:

"Memorandum of agreement made and entered into this 13th day of August, 1915, by and between William St. James, of St. Ignace, Michigan, party of the first part and the Embury-Martin Lumber Company, a corporation, of Cheboygan, Michigan, party of the second part.

"Witnesseth: Whereas the party of the first part is the owner of all timber with the right to cut same, on the following described lands (description).

"And whereas the parties hereto desire that the saw log timber shall be lumbered and sold by first party to second party, and manufactured at second party's mill in the city of Cheboygan, Michigan, the bark to be sold to advantage.

"Now, therefore, for and in consideration of second party's covenants herein contained, the party of the first part hereby sells and conveys to the party of the second part all of the saw log timber on the lands hereinbefore described with the right to enter upon said lands and cut and remove said timber at any time.

"And for and in consideration of first party's covenants herein contained, second party hereby purchases said timber as aforesaid, and agrees to pay therefor, as hereinafter provided, for such timber as shall be cut and removed, timber not removed is not to be paid for, as follows, to-wit:

"The party of the second part is to exercise its endeavors to cause said timber to be cut and removed within the time limited, and in this respect it will accept the assistance of the party of the first part, the expenses of lumbering said timber, freighting the same to mill and manufacturing the same is to be charged against the product, and in this charge said second party is to make a charge of $3 per thousand feet for sawing all floatable timber, and $4 per thousand feet for all hardwood logs, the expense of lumbering the timber on the land shall not exceed the sum of $7 per thousand feet and if the Embury-Martin Lumber Company by its own efforts or through the efforts of first party is able to have the timber lumbered for less, then of course, only the actual expense of lumbering

shall be charged up. The expense of placing the hemlock bark f. o. b. cars shall not exceed the sum of $5.50 per cord, the amount of the profit on the bark over and above the cost of placing the same on cars as aforesaid is to be divided equally between the parties hereto. Logs shall be scaled on skid, the scaler mutually to be hereafter agreed upon, and when so scaled, stumpage (the selling price), shall be paid by second party to the first part, as follows:

"$7 per thousand feet on the white pine, and $4 per thousand feet on all other kinds of timber.

"The Embury-Martin Lumber Company shall keep an account of all the costs, expenses, and moneys of every name and nature which it expends, including stumpage, freighting, towing to mill, scaling, sawing, all other proper charges against said logs and timber, including the saw bill against said timber and the expenses of marketing, inspection charges, etc., and so as to arrive at the net amount of the profit after the same shall have been sold and paid for, and the balance or net profit thereon, shall be divided equally between the parties hereto.

"In cutting the maple timber on said land, it is agreed that second party shall not be required to cut and take such maple timber that will run to exceed 40 per cent. culls, or what is known in the trade as number threes, and the scale shall be made accordingly.

"The taxes on the land shall be cared for by the first party.

"It is agreed that in scaling the hardwood logs they shall be scaled full, rot and crooks deducted; black hearts are not considered defects."

During the season of 1915-1916, plaintiff under an agreement with defendant cut logs from the land at the contract price of $7 per thousand, and in the season of 1916-1917, plaintiff again cut logs as did one Michelin under like agreements with defendant. By the terms of the contract, in addition to the $7 per thousand for cutting logs, plaintiff was entitled to $7 per thousand for white pine logs and $4 per thousand for other logs, and he was entitled to one

half the net profit on the lumber when manufactured and sold by defendant.

1. It is the claim of defendant that in May, 1916, and again in May, 1917, settlements were made covering all operations for the seasons named, and that the method of settlement was to fix flat prices on the different kinds of logs rather than to await an accounting and division of profits under the contract. This claim is disputed by plaintiff. The trial judge found for defendant on this question. Defendant's manager Martin and others, defendant's employees, testified positively to the making of such arrangement. Plaintiff received statements and checks indicating settlements on that basis. He cashed the checks. He made no complaint until after the third season of operation. Both plaintiff and Martin were men of experience in the various branches of the lumber business. The trial judge said of them:

"Their appearance is such as to impel one to the belief that they are both upright men—men of integrity and men of business ability."

We think plaintiff should be held to have understood the statements and the effect and purpose of the payments. The great weight of the evidence is with defendant on this question and the finding of the trial court hereon therefore is sustained.

2. The operation of the season of 1917-1918 is to be accounted for under the contract. This presents the second question in the case. The lumbering was done by Michelin at the price of $10.50 per thousand, an advance of $3.50 over the price named in the contract. Plaintiff admits an agreement on his part to pay 50 cents per thousand of the advance, but claims that the advance of $3 per thousand was paid by defendant to Michelin without plaintiff's consent and that therefore such payment should not be considered in determining under the contract the net profit on the

lumber for that season. Defendant claims that plaintiff consented to the advance and that it should be charged to the joint adventure. The trial judge found for plaintiff on this question. This is a question of some difficulty under the proofs. Plaintiff's claim is again met by the testimony of Martin and by the testimony of an employee of defendant. Michelin, who was present at the conference between plaintiff and Martin where it is said the matter was agreed upon, gave rather neutral testimony.

It appears that the cost of lumbering had advanced, that the price of $10.50 had to be paid if lumbering was to be done, that there had been a fire on the land which had damaged the timber and that it was to plaintiff's advantage to have the timber taken out in that season, and that defendant was not obliged by the contract to have the timber taken out. These circumstances, with the testimony of Martin and the employee, support defendant's contention.

But plaintiff is said to have support for his claim. At such conference a memorandum was prepared for signing, was not signed, but it is said to indicate the agreement:

"St. James agrees to take $4 stumpage for what timber now is on lands of which we have contract. We have also agreed to allow Geo. Michelin $10.50 (ten-fifty) for lumbering and loading on cars and delivering the soft logs to the river. We figure as follows: $10.50 for lumbering, $4 freight, $4 stumpage and $4 saw bill and after lumber is sold to divide profit, whatever there is, it is also agreed that St. James pays Michelin 50 cents a thousand of his profit, that is, E. M. L. Co. pays $10 of the above to Michelin and St. James the 50 cents, making the above $10.50."

And defendant wrote a letter to plaintiff speaking of certain timber which it claimed was not saw log timber within the meaning of the contract, saying, "We certainly cannot pay $10 to lumber it." With

plaintiff's testimony that he was to pay no part of the $3 lumbering charge and the writings, which might be construed to hold defendant therefor, arrayed against the testimony and circumstances, above reviewed, supporting defendant's position, we are aided by the opinion of the trial judge who saw the witnesses and heard the testimony. We accept his view.

3. Defendant made hardwood squares, lath, and other by-products from slabs taken from the logs at its sawmill. It contends that it should not account for such by-products, that slabs are a part of the "saw bill" which defendant was to have in accounting under the contract, that:

"There is a general custom now prevailing and which has prevailed for a great many years throughout the lumbering district of Michigan, Wisconsin and Minnesota that the sawmill owner retains as included in the saw bill and belonging to the mill, these slabs or saw offal from logs which the owners have contracted to saw. * * *
"The parties (plaintiff and defendant) made the contract of August 13, 1915, with a knowledge, actual or conclusively presumed, of the custom aforesaid and of the meaning in the trade of the term 'saw bill' and that custom and that meaning became and is a part of the contract."

Counsel say:

"The record shows that there is a general custom, universal, uniform, certain, definite, notorious, continued and well established that the sawmill owners retain as included in the saw bill and belonging to the mill as part compensation for sawing, the slabs or saw offal from logs which they have contracted to saw. This custom has existed throughout the entire lumbering district of Michigan, Wisconsin and Minnesota as long back as old experienced lumbermen can remember."

We think the contentions and statement quoted well sustained by the testimony of many experienced

lumbermen, and that the parties must be held to have contracted with reference to such custom. We think the custom so clearly established as to overcome the reluctance generally attending the admission of customs into the law. See *Strong* v. *Railroad Co.*, 15 Mich. 206 (93 Am. Dec. 184); 17 C. J. p. 496; and that it is shown to be certain, definite, uniform, and notorious. *Pennell* v. *Transportation Co.*, 94 Mich. 247; *Fogarty* v. *Railroad Co.*, 180 Mich. 422. But the custom must be reasonable and lawful. See *Strong* v. *Railroad Co.*, *supra;* 17 C. J. p. 467. That it is general and established raises a presumption of its reasonableness. *Cox* v. *Insurance Co.*, 3 Rich. (S. C.) 331 (45 Am. Dec. 771).

Plaintiff, saying that the custom is unreasonable, cites *Wadley* v. *Davis*, 63 Barb. (N. Y.) 500. There an owner of a stave mill claimed by custom the right to have from a customer cull bolts, cull staves and corner pieces made from stave bolts. It was held that the custom was not lawful. Plaintiff also cites *Atkinson* v. *Allen*, 29 Ind. 375. But there evidence of custom was not admitted as being in conflict with the express terms of a contract, which contract is not like the one in the case at bar.

Defendant cites a case from Wisconsin, one of the States within which the custom is said to prevail, *Hewitt* v. *Lumber Co.*, 77 Wis. 548 (46 N. W. 822), where the jury found:

"A general custom in the sawmills on the Wisconsin river on September 29, 1886, and for many years prior thereto, that the manufacturer kept the slabs made therefrom unless otherwise specifically agreed upon."

and of which it was held:

"The custom was, we think, a proper and lawful custom and one which would be likely to be adopted by parties dealing in the furnishing of logs by one party and the manufacturing of them by another party, for

the reason that the slabs would be of considerable value to the mill owner and of little or no value to the man furnishing the logs if required to remove them from the mill.   It certainly is not an unlawful custom. Now the object of proving a general custom is not to contradict or change the contract between the parties but to interpret it to the court and jury as it was understood by the parties at the time it was made and this evidence of a general custom when it does not contradict or change the express terms of the written contract is admitted for the purpose of showing what the real contract between the parties was.   *   *   *   And when it is clearly proven, the parties are supposed to have contracted in reference to such  custom  unless such custom changes the express terms of the written contract."

And it was held in *Cohoon* v. *Harrell,* 180 N. C. 39 (103 S. E. 906), quoting from syllabus:

"Where owner sold 'all merchantable timber to be cut from the S. place at $9 per 1,000 feet, board measure,' and it was well understood that the buyer was to have the lumber sawed at some mill, the seller was not entitled to recover from the sawmill the slabs and billets of wood, where it was shown to be the universal custom in the locality that a mill man was entitled to the slabs and billets."

And in *Morningstar* v. *Cunningham,* 110 Ind. 328 (11 N. E. 593, 59 Am. Rep. 211), quoting from syllabus:

"Evidence of the known and usual usage of packing-houses in Indiana to retain certain portions of animals killed by them, as a compensation for their trouble, is competent, where a contract made in the course of such business is ambiguous, to show that the contract was made with reference to such a usage."

Upon this record and under the weight of authority, we hold that the custom here shown was not unreasonable or unlawful, and it was not repugnant to the contract.   See 17 C. J. p. 508.   The trial judge was right in rejecting plaintiff's claim respecting the slabs.

4. The contract covered "saw log timber." Plaintiff contends that certain cedar taken by defendant should be accounted for under the contract as saw logs. Defendant insists that there was a special agreement respecting the cedar and that it was taken at and according to its market value and not as saw log timber. Some force is given to defendant's claim by the fact that under the settlements first above mentioned cedar was taken at $8.50 per thousand, which was less than the aggregate contract price for logs and logging. But we find in the scaler's certificates cedar many times listed as logs, included in the scale of logs, and that the regular lumbering charge for logs was made against cedar as against other logs. Reading the evidence relating to this subject leads to the conclusion that the trial judge correctly held plaintiff entitled to have the cedar accounted for under the contract.

5. Other claims such as fraud, over-run and under-run at the mill, are advanced, but we find no satisfactory evidence to support them, and they are held to be without merit. Defendant admitted owing plaintiff $1,541.51. The decree, by adding the logging charge of $3 per thousand and by changing the method of accounting for the cedar and by interest increased the amount to be paid to plaintiff to $3,131.57.

Affirmed. As both parties appealed, no costs will be awarded.

FELLOWS, C. J., and WIEST, McDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.